UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ROCHELLE KENTOV, Regional Director
of the Twelfth Region of the National Labor
Relations Board, for and on behalf of the
NATIONAL LABOR RELATIONS BOARD,

                Petitioner

v.

POINT BLANK BODY ARMOR, INC.
and NDL PRODUCTS, INC., a Single Employer,

                Respondent

02-61716

Civil No.   MAGISTRATE JUDGE
                      SELTZER

CIV-MARRA / SELTZER

---

**PETITION FOR INJUNCTION UNDER SECTION 10(j)
OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED**

To the Honorable Judges of the United States District Court for the Southern District of Florida, Miami Division:

Comes now Rochelle Kentov, Regional Director for Region 12 of the National Labor Relations Board (the Board), and petitions this Court for and on behalf of the Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended, 61 Stat. 149; 73 Stat. 544; 29 U.S.C. Section 160(j) (the Act), for appropriate injunctive relief pending the final disposition of the matters involved herein pending before the Board, on a Consolidated Complaint of the General Counsel for the Board, alleging that Respondent has engaged in, and is engaging in, acts and conduct in violation of Section 8(a)(1) and (3) of the Act. In support thereof, Petitioner respectfully shows as follows:

1. Petitioner is the Regional Director of Region 12 of the Board, an agency of the United States, and files this Petition for and on behalf of the Board.



1

2. Jurisdiction of the Court is invoked pursuant to Section 10(j) of the Act.

3.(a) On or about July 22, 2002, Union of Needletrades, Industrial and Textile Employees (UNITE!), AFL-CIO/CLC (the Union or UNITE) filed the original charge in Case 12-CA-22383 with the Board, alleging, inter alia, that Point Blank Body Armor, Inc. has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. A copy of said charge is attached hereto as Exhibit 1 and made a part hereof.

(b) On or about August 9, 2002, the Union filed the original charge in Case 12-CA-22432 with the Board, alleging, inter alia, that Point Blank Body Armor, Inc. has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. A copy of said charge is attached hereto as Exhibit 2 and made a part hereof.

(c) On or about August 13, 2002, the Union filed the original charge in Case 12-CA-22437 with the Board, alleging, inter alia, that Point Blank Body Armor, Inc. has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. A copy of said charge is attached hereto as Exhibit 3 and made a part hereof.

(d) On or about August 30, 2002, the Union filed the original charge in Case 12-CA-22466, alleging, inter alia, that Point Blank Body Armor, Inc. has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. A copy of said charge is attached hereto as Exhibit 4 and made a part hereof.

(e) On or about September 25, 2002, the Union filed an amended charge in Case 12-CA-22437, alleging, inter alia, that Point Blank Body Armor, Inc. has engaged in, and

is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. A copy of said amended charge is attached hereto as Exhibit 5 and made a part hereof.

(f) On or about September 25, 2002, the Union filed an amended charge in Case 12-CA-22466, alleging, inter alia, that Point Blank Body Armor, Inc. has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. A copy of said amended charge is attached hereto as Exhibit 6 and made a part hereof.

4. The charges described above in paragraphs 3(a) through 3(f) were referred to the Regional Director of the Twelfth Region of the Board.

5. On October 24, 2002, upon the charges described above in paragraphs 3(a) through 3(f), the General Counsel of the Board, on behalf of the Board, pursuant to Section 10(b) of the Act, and Section 102.15 and Section 102.33 of the Board's Rules and Regulations, issued an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing. A copy of the Order Consolidating Cases, Consolidated Complaint and Notice of Hearing (herein called the Consolidated Complaint) is attached hereto as Exhibit 7 and made a part hereof.

6. There is reasonable cause to believe that the allegations set forth in said Consolidated Complaint are true and that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act and affecting commerce within the meaning of Section 2(6) and (7) of the Act, as more particularly set forth below in paragraphs 7(a) through 7(rr). In support thereof and of the

3

request for injunctive relief herein, Petitioner shows, upon information and belief, as follows:

7.(a) At all material times, Point Blank Body Armor, Inc. and NDL Products, Inc., corporations with places of business in Oakland Park, Florida (Respondent's facility), have been engaged in the business of production and sale of body armor and related accessories for use by governmental entities, state and local police departments, and correctional facilities.

(b) At all material times, Point Blank Body Armor, Inc. and NDL Products, Inc., have been affiliated business enterprises with common ownership, and supervision; have operated under the same personnel and labor relations policies; have shared common premises, facilities and equipment; have provided services for each other; have interchanged personnel with one another; and have held themselves out to the public as single-integrated enterprises.

(c) Based on its operations described above in paragraph 7(b), Point Blank Body Armor, Inc. and NDL Products, Inc. constitute a single-integrated business enterprise and a single employer within the meaning of the Act.

(d) During the past 12 months, Point Blank Body Armor, Inc. and NDL Products, Inc., in conducting their business operations described above in paragraph 7(a), purchased and received at their facility products, goods, materials and equipment valued in excess of $50,000 directly from points located outside the State of Florida.

(e) At all material times, Point Blank Body Armor, Inc. and NDL Products, Inc., have been engaged in commerce within the meaning of Section 2(2),(6) and (7) of the Act, and hereinafter will be referred to as Respondent.

(f) At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

(g) At all material times, Supervisor John Jairo Castillo, Supervisor Zalina Ali,[1] Human Resources Manager Jesse Dominguez, Supervisor Blanca Frias, Chief Operations Manager Ronda Graves, President and Chief Operating Officer Sandra Hatfield, Supervisor Etalvina Martin, Quality Assurance Manager Roberto Pamalaza, and Plant Production Manager Juan Valle have been supervisors of Respondent within the meaning of Section 2(11) of the Act, and agents of Respondent within the meaning of Section 2(13) of the Act.

(h) On or about July 15, 2002, Respondent, by Etalvina Martin, at its facility, interrogated employees about their union activities and support.

(i) On or about July 15, 2002, Respondent, by Etalvina Martin, at its facility, threatened employees with loss of jobs in retaliation for their union activities and support.

(j) On or about July 15, 2002, Respondent, by Etalvina Martin, at its facility, threatened employees with plant closure in retaliation for their union activities and support.

(k) On or about July 18, 2002, Respondent, by Etalvina Marin, at its facility, threatened to send employees home if they continued to engage in union and concerted protected activities.

(l) On or about July 18, 2002, Respondent sent its employees home early.

(m) On or about July 18, 2002, Respondent discharged Sadius Isma.

---

[1] Ali's name was corrected and the Consolidated Complaint amended to reflect her correct name at the hearing before the administrative law judge on December 2, 2002.

5

(n) Respondent engaged in the conduct described above in paragraphs 7(l) and 7(m) because its employees assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

(o) On or about July 19, 2002, Respondent, by Blanca Frias, at its facility, threatened employees with plant closure in retaliation for their union activities and support.

(p) On or about July 19, 2002, Respondent, via its speaker system, at its facility, prohibited employees from going to other departments to talk to their co-workers at all times in retaliation for their union activities and support and to discourage concerted, protected activities.

(q) On or about July 19, 2002, Respondent changed employees' scheduled work times, break times, and lunch times.

(r) From on or about July 19, 2002, to on or about August 12, 2002, Respondent failed to provide overtime to employees.

(s) Respondent engaged in the conduct described above in paragraphs 7(q) and 7(r) because employees assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

(t) On or about July 22, 2002, Respondent, by Etalvina Martin and Juan Valle, at its facility, interrogated employees about their union activities and support.

(u) On or about July 22, 2002, Respondent, by Juan Valle, at its facility, promised employees wage increases to discourage employees' union activities and support.

(v) On or about July 22, 2002, Respondent, by Etalvina Martin, at its facility, promised employees better working conditions, medical insurance and wage increases to discourage employees' union activities and support.

(w) On or about July 22, 2002, Respondent, by Juan Valle, at its facility, threatened employees with discharge in retaliation for their union activities and support.

(x) On or about July 25, 2002, Respondent, by Juan Valle, at its facility, impliedly threatened employees with loss of work in retaliation for their union activities and support.

(y) On or about July 25, 2002, Respondent, by Juan Valle, at its facility, threatened employees with plant closure in retaliation for their union activities and support.

(z) On or about July 29, 2002, and on other dates not specifically known to the undersigned, Respondent, by Zalina Ali, at its facility, threatened employees with plant closure in retaliation for their union activities and support.

(aa) On or about July 29, 2002, Respondent, by Zalina Ali and Sandra Hatfield, at its facility, threatened employees with loss and removal of work in retaliation for their union activities and support.

(bb) In or around late July, 2002, on a date not more specifically known by the undersigned, Respondent, by John Jairo Castillo, at its facility, threatened employees with lower wage rates in retaliation for their union activities and support.

(cc) In or around late July, 2002, on a date not more specifically known by the undersigned, Respondent, by John Jairo Castillo, at its facility, threatened employees with unspecified reprisals in retaliation for their union activities and support.

7

(dd) In or around late July, 2002, on dates not more specifically known by the undersigned, Respondent, by John Jairo Castillo, at its facility, threatened employees with plant closure in retaliation for their union and concerted, protected activities.

(ee) In or around late July, 2002, on a date not more specifically known to the undersigned, Respondent, by Etalvina Martin, at its facility, promised employees promotions to discourage employees' union activities and support.

(ff) Since in or around late July, 2002, on dates not more specifically known by the undersigned, Respondent, by Zalina Ali, at its facility, impliedly threatened employees with a loss of benefits in retaliation for their union activities and support.

(gg) On or about August 1, 2002, Respondent discharged Carlos Alejandro Briseno.

(hh) Respondent engaged in the conduct described above in paragraph 7(gg) because the named employee and other employees assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

(ii) On or about August 2, 2002, Respondent, by Sandra Hatfield, via a memo to employees, threatened employees with layoff in retaliation for their union activities and support.

(jj) On or about August 2, 2002, Respondent, by Sandra Hatfield, via a memo to employees, threatened employees with the transfer of work in retaliation for their union activities and support.

(kk) On or about August 8, 2002, Respondent issued a written warning to Midho Cadet and sent him home early.

(ll) On or about August 9, 2002, Respondent discharged Midho Cadet.

(mm) Respondent engaged in the conduct described above in paragraphs 7(kk) and 7(ll) because the named employee and other employees assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

(nn) On or about August 9, 2002, Respondent, by Sandra Hatfield, at its facility, impliedly promised employees wage increases and a favorable change in employees' start times as a reward for their disavowal of the Union.

(oo) On or about August 9, 2002, Respondent, by Roberto Pamalaza, at its facility threatened employees with discharge in retaliation for their union activities and support.

(pp) Since on or about August 9, 2002, certain employees of Respondent ceased work concertedly and engaged in a strike.

(qq) The strike described above in paragraph 7(pp) was caused by Respondent's unfair labor practices.

(rr) On or about August 28, 2002, Respondent, by Sandra Hatfield, via a letter to employees, threatened employees that they no longer had jobs because they had been permanently replaced in retaliation for their union activities and support.

8. There is reasonable cause to believe that by the acts described above in paragraphs 7(h) through 7(k), 7(o), 7(p), 7(t) through 7(ff), 7(ii), 7(jj), 7(mm), 7(oo), and 7(rr), Respondent has been interfering with, restraining and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act, in violation of Section 8(a)(1), and Section 2(6) and (7) of the Act.

9. There is reasonable cause to believe that by the acts described above in paragraphs 7(m), 7(n), 7(q), 7(r), 7(s), 7(gg), 7(hh), 7(ll), and 7(mm), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization, in violation of Section 8(a)(3) and (1), and Section 2(6) and (7) of the Act.

10. Because of the acts and conduct described above in paragraphs 7(h) through 7(oo), and 7(rr), Petitioner has concluded that Respondent has discriminated against employees in regard to their employment because of their concerted, protected activities and activities and support of the Union, and that Respondent has interfered with the rights of employees guaranteed in Section 7 of the Act. It is therefore necessary, just and proper that the effects of the aforesaid acts and conduct of Respondent be dissipated by remedial action on the part of Respondent so that its employees can freely exercise the rights guaranteed them by the Act and their rights not be impeded, impaired or hindered.

11. There is imminent danger that substantial and irreparable injury will result to the Union's status in this organizational campaign and to Respondent's employees' free choice in deciding whether or not to choose the Union as their collective-bargaining representative unless the continuation of the aforementioned unfair labor practices is immediately restrained, and that a serious flouting of the Act will continue with the result that enforcement of important provisions of the Act and of the public policy will be impaired before Respondent can be placed under legal restraint through the regular procedure of a Board order and enforcement decree. Unless injunctive relief is immediately obtained, it may fairly be anticipated that Respondent will continue its unlawful conduct during the proceedings before the Board and during subsequent

proceedings before a Court of Appeals for an enforcement decree with the result that employees will continue to be deprived of their Section 7 rights through the Respondent's undermining of employee support for the Union and disruption of the "laboratory conditions" necessary to permit the holding of a fair election, and with the passage of time, any Board order will likely be rendered meaningless.

12. Upon information and belief, to avoid the serious consequences as set forth above, it is essential, just, proper, and appropriate for the purposes of effectuating the policies of the Act, and avoiding substantial, irreparable, and immediate injury to such policies, to the public interest, and to employees of Respondent at its facility in Oakland Park, Florida, and in accordance with the purposes of Section 10(j) of the Act, that pending the final disposition of the matters involved pending before the Board, Respondent be enjoined and restrained from commission of the acts and conduct alleged above, similar acts and conduct, or repetition thereof, and be ordered to take the affirmative action set forth below.

13. Petitioner has not previously sought the relief requested herein.

WHEREFORE, Petitioner prays:

1. That the Court issue an order directing Respondent to appear before this Court, at a time and place to be fixed by the Court, and show cause, if any there be, why an injunction should not issue:

    A. Enjoining and restraining Respondent or its officers, agents, representatives, servants, employees, and all members and persons acting in concert with it, pending the final disposition of the matters involved pending before the Board, from:

        (1) Disciplining employees because of their union support and activities;

(2) Discharging employees because of their union support and activities;

(3) Threatening to send employees home because of their union support and activities;

(4) Interrogating employees about their union support and activities;

(5) Threatening to lay employees off or discharge employees because of their union support and activities;

(6) Threatening employees with a reduction in wages or a loss of benefits because of their union support and activities;

(7) Threatening or impliedly threatening employees with a loss of jobs, loss and removal of work, transfer of work, closure of the Oakland Park, Florida facility and/or other unspecified reprisals because of employees' union support and activities;

(8) Changing employees' scheduled work times, including start times, break times, and lunch times, because of their union support and activities;

(9) Preventing employees from going to other departments and speaking with co-workers while on non-working time because of employees' union support and activities;

(10) Denying employees overtime because of their union support and activities;

(11) Telling striking employees participating in an unfair labor practice strike that they no longer have jobs because they have been permanently replaced;

 (12) Promising or impliedly promising employees promotions, start time changes, wage increases, better working conditions and medical insurance to get them to withdraw their support for the Union;

 (13) Sending employees home early because of their union support and activities;

 (14) In any other manner, interfering with, restraining, or coercing its employees in the exercise of their Section 7 rights.

B. Affirmatively directing Respondent or its officers, agents, representatives, servants, employees, and all members and persons acting in concert with it, pending the final disposition of the matters involved pending before the Board, to:

 (1) Within five (5) days of the date of the court's order, reinstate discharged employees Sadius Isma, Carlos Alejandro Briseno, and Midho Cadet, displacing if necessary, any newly hired or transferred workers who replaced them;

 (2) Within five (5) days of the date of their unconditional offers, reinstate unfair labor practice strikers who make unconditional offers to return to work, displacing if necessary, any newly hired or transferred workers who replaced them;

 (3) Re-institute the employees' scheduled start times, break times and lunch times to those in effect immediately prior to July 15, 2002;

 (4) Post copies of the district court's opinion and order, including Spanish and Haitian Creole translations thereof approved by the Regional Director of Region 12 of the Board, at its facility and offices in

Oakland Park, Florida, in all locations where Employer notices to unit employees are customarily posted, and maintain these postings during the Board's administrative proceeding free from all obstructions and defacement, and grant to agents of the Board reasonable access to the facility to monitor compliance with this posting requirement; and

(5) Within 20 days of the issuance of the district court's order, serve upon the Court and the Regional Director of Region 12 of the Board a sworn affidavit from a responsible official of Respondent which states with specificity the manner in which the Respondent has complied with the terms of the court's decree.

2. That, upon return of the Order to Show Cause, the Court issue an Order enjoining and restraining Respondent in the manner set forth above in paragraphs 1.A.(1) through (14), and directing Respondent to take the affirmative action set forth above in paragraph 1.B.(1) through (5).

3. That the Court grant such further and other relief as may be just and proper.

DATED at Tampa, Florida, this 3rd day of December, 2002.

*Rochelle Kentov*
Rochelle Kentov, Regional Director
National Labor Relations Board, Region 12
201 E. Kennedy Boulevard, Suite 530
Tampa, Florida  33602

MARGARET J. DIAZ, Regional Attorney
Florida Bar #320692

*Jennifer Burgess-Solomon*

Jennifer Burgess-Solomon, Attorney for Petitioner
Florida Bar #995697
National Labor Relations Board, Region 12
51 S.W. First Avenue, Suite 1320
Miami, Florida 33130
Telephone: (305) 536-5391
Facsimile: (305) 536-5320

STATE OF FLORIDA         )
                         )
COUNTY OF HILLSBOROUGH)

I, Rochelle Kentov, being first duly sworn, depose and say that I am Regional Director of Region 12 of the National Labor Relations Board; that I have read the foregoing petition and exhibits and know the contents thereof; that the statements therein made as upon personal knowledge are true and those made as upon information and belief, I believe to be true.

*Rochelle Kentov*
Rochelle Kentov, Regional Director
National Labor Relations Board, Region 12
201 East Kennedy Boulevard, Suite 530
Tampa, Florida  33602

Subscribed and sworn before me

this 3rd day of December, 2002

*Mildred W Cosby*
Notary Public

Mildred D Cosby
My Commission DD066143
Expires January 23, 2006

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

02-61716

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

National Labor Relations Board

**DEFENDANTS** CIV-MARRA

Point Blank Body Armor, Inc.
and NDL Products, Inc., a Single Employer

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

MAGISTRATE JUDGE

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Broward  02-61716 civ Marra / BSS

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) 305-536-5391
Jennifer Burgess-Solomon
National Labor Relations Board
51 SW 1st Ave., Suite 1320, Miami, FL 33130

ATTORNEYS (IF KNOWN) Joan Canny, Esq.
Stearns Weaver Miller Weissler Alhadeff &
Sitterson, P.A.
150 W. Flagler Street, Miami, FL 33130

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, (BROWARD,) PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☒ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | A☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

National Labor Relations Act, 29 U.S.C. Section 160 (j). Petition seeks appropriate injunctive relief pending final disposition of the matters pending before the National Labor Relations Board on an amended consolidated complaint of the Board alleging that Respondent has engaged in, and is engaging in, acts and conduct in violation of Section 8(a)(1) and (3) of the Act.

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $
Temporary Injunction

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S)** (See instructions):
IF ANY
JUDGE _____ DOCKET NUMBER _____

DATE 12-6-02

SIGNATURE OF ATTORNEY OF RECORD
Jennifer Burgess-Solomon

**FOR OFFICE USE ONLY**

RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___